Bernard F. McCaffrey, J.
The issue to be resolved here is whether a doctor in a malpractice action may be compelled to give expert opinion testimony as to the treatment and/or care rendered by another codefendant physician, when it is outside his particular medical specialty.
Thus, in addition to certain objections to form of questions, there are raised additional objections which go to the heart of the holdings of McDermott v Manhattan Eye, Ear & Throat Hosp. (15 NY2d 20) and Johnson v New York City Health & Hosps. Corp. (49 AD2d 234), regarding expert medical testimony from a defendant physician in a medical malpractice action.
It is the contention of the defendant that the McDermott and Johnson decisions (supra) stand for the proposition that a defendant doctor in a malpractice action may be required to testify as a witness only as to his examination, diagnosis or testimony pertaining to the plaintiff who has commenced a legal action against him; and that he may not be compelled to offer expert opinion testimony outside his own medical spe *127 cialty regarding the prescribing of medications and the procedures of treatment with respect to any other doctors.
On the other hand, it is the plaintiffs contention that not only may the defendant doctor be questioned as to his factual knowledge of the case; but also he may be questioned as an expert for the purpose of establishing the generally accepted medical practice in the community, not only as it relates to his specialty as a pediatrician but also as it relates to a codefendant’s specialty as an obstetrician in their medical treatment of the infant plaintiff.
Though they differ in their interpretation, both parties cite as authority for their contentions the next to last paragraph in Johnson (supra), in which the Appellate Division, Second Department, by Mr. Justice Shapiro, held (p 237): "Since it is clear under McDermott (15 NY2d 20, 29-30 supra) that 'a plaintiff in a malpractice action is entitled to call the defendant doctor to the stand and question him both to his factual knowledge of the case (that is, as to his examination, diagnosis, treatment and the like) and, if he be so qualiñed, as an expert for the purpose of establishing the generally accepted medical practice in the community’ ” (emphasis supplied).
It is, therefore, the contention of the defendant that the defendant, Dr. Rhein, who has a specialty of pediatrics, and did not administer any prenatal medicine or treatment, should not be compelled to offer expert testimony regarding the prenatal medication prescribed by the codefendant obstetrician for the mother of the plaintiff infant.
Though a substantial portion of the 72 pages of the examination before trial is replete with objections and personal colloquy between counsel, nevertheless, the court upon its review of the examination before trial notes the following significant excerpts:
"Q. Doctor, you told us that the fact that the mother had received pre-medication, was of some interest to you in examining the baby; didn’t you?
"A. Yes.”
OBJECTION AND COLLOQUY
"Q. Doctor, assuming that Mrs. Harley received fifty milligrams of Demerol and five milligrams of Valium intramuscularly, at nine-forty P.M., on July 15th, 1971, would this be of any interest of significance to you with regard to your exami *128 nation of the baby Harley, on the sixteenth of July, 1971, neonatally?”
"Q. Doctor, are you aware of the various literature which were available in July of 1971, concerning the use of Demerol as pre-medication and its effect on a fetus?”
"the witness: In the usual dosages, these medications had no effect on the baby.
"Q. What was the usual dosage that you refer to?
"A. That the obstetrician used.
"Q. You have used a phrase, usual dosages, what was the usual dosage?
"mr. schad: He is a pediatrician, not an obstetrician. There is a slight difference in specialty. Now ask him questions about the specialty of pediatrics. You will get answers.
"mr. stanisci: This involves pediatrics, counselor, because a pediatrician who is dealing with mothers, who have received acopolamine, Demerol and Valium and its effect upon the fetus or neo-natal infant is of quite great deal of significance to him, if he knows what he is doing.”
With respect to the defendant, Catholic Medical Center, it is noted:
"Q. What were you told, if anything, concerning the observation of to whom you spoke, concerning the baby’s condition?
"A. There was a questionable report of the baby, possibly having been cyanotic during the night.
"Q. Was this told you?
"A. That was told to me.
"Q. Who told it to you?
"A. A nurse quoted an aide.”
The shield which previously insulated a defendant doctor from rendering expert opinions has, as Justice Shapiro noted in the Johnson decision, been pierced by the McDermott decision. However, this does not mean that the court has placed a sword in the hands of the plaintiff to, without restrictions, arbitrarily compel a defendant doctor to render expert opinion testimony in a medical field outside his expertise, for the intention was only to balance the equities between the parties.
Thus, the mere fact that a defendant is a licensed doctor does not mean that he is obligated to give expert medical opinion testimony concerning treatment and medication ren *129 dered by another treating codefendant doctor. There must, as here, be a showing that there is a proper basis for the inquiry and that the evidence sought is within his expertise.
However, the court notes that the showing need be only that the inquiry falls within his expertise, as distinguished from his specialty. For the enlightened principles of fair play enunciated in McDermott and Johnson should not be nullified by any self-serving classification of medical specialities.
Thus, since the primary question raised by counsel’s objections and this motion, is, counsel for plaintiffs’ right to examine defendant doctor’s expertise and accepted medical practice in the community. Defendant’s expertise and his opinions with regard to proper medical practice are obviously not “palpably irrelevant” to the action at hand (Freedco Prods. v New York Tel. Co., 47 AD2d 654, 655) and should be answered. “From an evidentiary point of view in fact, the scope of the pretrial examination is even broader then that at the trial” (Johnson v New York City Health & Hosps. Corp., supra, p 237).
Accordingly, plaintiffs’ motion for an order compelling defendants, Catholic Medical Center of Brooklyn and Queens, Inc. and Dr. Henry C. Rhein, to appear for their further examinations before trial, is granted.