OPINION OF THE COURT
Joseph J. Maltese, J.
A physician who is a codefendant in a medical malpractice action may be asked to express an opinion about the actions of the other codefendant physicians or other medical staff members, if he or she is professionally qualified to render an opinion which is relevant to the case.
Facts
During a medical malpractice trial involving the delivery of a severely brain damaged baby the defense attorney, Raymond Belair, Esq., who represented an anesthesiologist, a pediatric resident, a neonatologist and the hospital, objected to plaintiffs’ counsel’s questions to the anesthesiologist about the actions of the codefendant obstetrician, which may have deviated from good and accepted medical practice during a cesarian section operation on the mother of the child. William Vasias, Esq., the attorney for the obstetrician, also joined in the motion.
Plaintiffs’ counsel, Thomas Moore, Esq., argued that he had the right to question a witness and member of the obstetrical team delivering the baby about what the team’s actions were and whether or not in his medical opinion it was proper or improper. This court agreed and now confirms that decision.
Discussion
In support of their contention that a codefendant may not testify about the actions of other codefendants, the defendants cited to Carvalho v New Rochelle Hosp. (53 AD2d 635 [2d Dept 1976]).
The genesis of the Carvalho decision (supra) is the New York Court of Appeals decision in McDermott v Manhattan Eye, Ear & Throat Hosp. (15 NY2d 20, 26 [1964]), which held that “a party in a civil suit may be called as a witness by his adversary and, as a general proposition, questioned as to matters relevant to the issues in dispute”. Our highest State Court went on to hold that “ ‘ “any living witness who could throw light upon a fact in issue should be heard to state what he knows, subject always to such observations as to his means of knowledge” ’ ” (supra, at 26). The Court also stated that “[w]e *584 cannot agree with the suggestion that it is somehow neither sporting nor consistent with the adversary system to allow a party to prove his case through his opponent’s own testimony” (supra, at 28).
The Court of Appeals concluded: “In short, then, a plaintiff in a malpractice action is entitled to call the defendant doctor to the stand and question him both as to his factual knowledge of the case (that is, as to his examination, diagnosis, treatment and the like) and, if he be so qualified, as an expert for the purpose of establishing the generally accepted medical practice in the community. While it may be the height of optimism to expect that such a plaintiff will gain anything by being able to call and question (as an expert) the very doctor he is suing, the decision whether or not to do so is one which rests with the plaintiff alone” (McDermott v Manhattan Eye, Ear & Throat Hosp., supra, at 29).
In Johnson v New York City Health & Hosps. Corp. (49 AD2d 234 [2d Dept 1975]) the Appellate Division, Second Department, held that the McDermott rule applied to depositions of expert defendants.
What the defendants refer to in Carvalho (supra, at 635) is not the general principle of law, but is instead dicta: “In an action for malpractice brought against more than one physician, one defendant physician may not be examined before trial about the professional quality of the services rendered by a co-defendant physician if the questions bear solely on the alleged negligence of the codefendant and not the practice of the witness” (emphasis added; citing McDermott v Manhattan Eye, Ear & Throat Hosp., supra).
The holding in Carvalho (supra) is that a codefendant may be deposed to give expert opinions about the services of a codefendant. “Where, however, the opinion sought refers to the treatment rendered by the witness, the fact that it may also refer to the services of a codefendant does not excuse the defendant witness from deposing as an expert” (at 635; emphasis added).
The Carvalho decision (supra), unlike McDermott (supra), deals with an examination before trial, not with a trial. It is clear that the Second Department’s rule in 1976 is aimed at not allowing a plaintiff to obtain free expert opinions from the *585 defendants as was cautioned in McDermott (at 30, n 5).[1] Carvalho is a policy decision discouraging plaintiffs from suing a physician for the purposes of obtaining multiple free expert opinions during discovery even when there is no merit to the case against that doctor.
Additionally, the Second Department clarified its position in Carvalho (supra) in 1977 in Harley v Catholic Med. Ctr. (57 AD2d 827, 828 [2d Dept 1977]), another case dealing with questions during an examination before trial. In Harley (at 828), the Second Department reiterated its holding in Carvalho that where “ ‘the opinion sought refers to the treatment rendered by the witness, the fact that it may also refer to the services of a codefendant does not excuse the defendant witness from deposing as an expert.’ ” In Harley, a pediatrician was asked questions regarding the effects on the infant of certain medicines given by the codefendant obstetrician during the mother’s labor. This was permitted as the questions did not “ ‘bear solely on the alleged negligence of the codefendant physician’ ” (supra, at 828).
In Segreti v Putnam Community Hosp. (88 AD2d 590, 592 [2d Dept 1982]) and Braun v Ahmed (127 AD2d 418 [2d Dept 1987]) the Second Department cited McDermott (supra) for the general rule “that a plaintiff in a medical malpractice action may call as a witness the doctor against whom she brought the action and question him as a medical expert.”
Additionally, in Gilly v City of New York (69 NY2d 509, 511 [1987]) the Court in discussing McDermott (supra) stated: “In McDermott v Manhattan Eye, Ear & Throat Hosp. (15 NY2d 20) we addressed the related issue of whether a physician-defendant could be called as an expert witness by the plaintiff in a medical malpractice case. We held that he could be, and refused to limit his testimony to ‘facts within his knowledge’ and things he ‘actually saw and did.’ The more enlightened view, we concluded, was that plaintiff should be permitted to examine his doctor-opponent as fully and freely as other qualified witnesses, and that such testimony could include expert opinion (id., at 26-29). We distinguished People ex rel. Kraushaar Bros. & Co. v Thorpe (296 NY 223) — in which we had held that a person may not be required to give an expert opinion involuntarily — noting that the defendant-physician was not an *586 independent, disinterested witness forced to attend the trial merely because he is ‘accomplished in a particular science, art, or profession’ who might be called upon in every case ‘in which any question in his department of knowledge is to be solved’ (id., at 29). Rather, he was already connected to the case. Thus, while the ‘unwilling witness who is in no way connected with the action’ could not be compelled to testify as an expert for the plaintiff, we held in McDermott that the defendant-physician — by virtue of his existing association with the case — could be (id.).”
This rationale was used during the trial of another medical malpractice action involving a brain damaged baby in the Supreme Court, New York County (Cruz v City of New York, 135 Misc 2d 393 [Sup Ct, NY County 1987]). In Cruz (supra, at 395), Justice Stanley L. Sklar held that a resident, who was not a named defendant, but was part of the obstetrical team delivering the baby, “is more likely than others to have critical factual information. His expert opinions concerning those facts may well be critical in our search for the truth — even though, as just noted, he has a motive to insulate himself from blame.” (Cf., McDermott v Manhattan Eye, Ear & Throat Hosp., 15 NY2d 20, 27-28, supra.) As McDermott noted, the decision to ask those questions calling for expert opinions should rest with plaintiff (15 NY2d, supra, at 30).
The treatise New York Medical Malpractice sums up this issue: “where a physician declines response to a question because it assertedly deals with the treatment by a codefendant, it is his burden to persuade the court that the question solely involves care rendered by another and is wholly irrelevant to what the witness himself did, did not do, knew or should have known. Significantly, where this issue has arisen, the courts typically ruled in favor of a response. It is a rare case where the medical witness can successfully argue that standards of practice in a related specialty are either wholly unknown to him, totally irrelevant to his own care and treatment of a patient, or clearly immaterial to the issue of causation, so justifying his refusal to respond.” (Bard and Maran, New York Medical Malpractice § 17.5.9.1, Comment [Bard 1994].)
*587 Conclusion
During the trial of a medical malpractice action the plaintiff may call the defendant as a hostile witness[2] and may ask leading questions about the actions or inactions of the doctors that he or she worked with in treating the plaintiff patient. When called as a witness, the defendant doctor must “respond to virtually all questions * * * relevant to the issues, even if his testimony on such matters might further the plaintiff’s case” (McDermott v Manhattan Eye, Ear & Throat Hosp., supra, at 28) as long as they are within his expertise, even if not in his specialty'(Harley v Catholic Med. Ctr., 88 Misc 2d 126 [Sup Ct, Nassau County 1976], affd 57 AD2d 827 [2d Dept 1977], supra).
In the case before this court Dr. Henry Sasso, an anesthesiologist, and Dr. Michael Monaco, an obstetrician, were both part of the team performing a caesarean section birth operation on the plaintiff mother. Hence, they may be asked their expert opinions as physicians as to the conduct of the other members of that team, if the information called for is relevant and that physician believes he is competent to render an opinion. A trial is a search for the truth. The fact that the truth might come out of the mouth of a codefendant should not preclude it from being uttered.
In this case, the information sought did not bear solely on the alleged negligence of the codefendant, but referred to the codefendants’ actions in conjunction with all of the actions and inactions of other members of that medical-surgical team. Therefore, such questions and the answers they elicit are part of that search for the truth. Thus, an attorney representing the doctors may not attempt to shield the codefendants from such inquiry by objecting to the question merely because he does not want to assist the plaintiff, or because he fears that the other codefendants may thereafter testify adversely against his client.
*588 Accordingly, the codefendant doctors are directed to answer the questions of counsel. The motions for a mistrial are thereby denied.
Post Script
After deliberation, the jury rendered a verdict where they found that Dr. Henry Sasso, the anesthesiologist, was not liable. However, they did find that Dr. Michael Monaco, the obstetrician, was 50% liable, the neonatalogist 10% liable and the hospital 40% liable. The individual action against the pediatric resident was discontinued during trial. The jury rendered a judgment of $53,735,955 where $5,000,000 was awarded for past pain and suffering, $12,500,000 over 45 years for future pain and suffering, $4,031,414 for therapies, medical care and equipment, and $28,731,591 for 45 years for nursing care. Loss of earnings were found to be $3,472,950 for 43 years. Unbeknownst to the jury, the obstetrician, Dr. Michael Monaco, settled with the plaintiff during trial for $3,000,000. Accordingly, the remaining verdict of $26,867,977.50 is against the hospital and its employee, the neonatalogist.

. The Court stated in the footnote: “It is, of course, assumed that a plaintiff, in naming a doctor as a defendant, has done so in good faith, on the basis of his relationship with the case and not as a device or subterfuge in order to afford the plaintiff an opportunity to call him as an expert witness.”

. In Jordan v Parrinello (144 AD2d 540, 541 [2d Dept 1988]) the Court held that “[i]t is well established that when an adverse party is called as a witness, it may be assumed that such adverse party is a hostile witness, and, in the discretion of the court, direct examination may assume the nature of cross-examination by the use of leading questions. However, a party may not impeach the credibility of a witness whom he calls (see, Becker v Koch, 104 NY 394) unless the witness made a contradictory statement either under oath or in writing (see, CPLR 4514). On this point we note that the trial court did recognize the exception to the rule when it permitted the plaintiffs counsel to attempt to impeach his witness with the latter’s deposition testimony.”